## License of Emaus Nest of Owls No. 1362

*D. J. F. Flood*, for petitioner.

*T. R. Gardner*, for respondent.

HENNINGER, J., March 15, 1937. — On January 20, 1936, a club catering liquor license for the year ending January 31, 1937, was granted to Emaus Nest of Owls No. 1362, authorizing the sale of liquor under the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as reënacted and amended by the Act of July 18, 1935, P. L. 1246, and under the rules and regulations promulgated thereunder, for premises 316-318 Main Street, Emaus, Pa.

On December 15, 1936, and on December 17, 1936, State enforcement officers, who were not members or guests of Emaus Nest of Owls No. 1362, nor members of any party for whom said licensee was catering, having received an anonymous letter, which is not in evidence, visited the premises of licensee and there purchased liquor from Russell Reinhard, one of the stewards of the club at that time. No inquiry was made as to their membership before they were served.

On February 8, 1937, the Attorney General of the Commonwealth of Pennsylvania applied to this court for the revocation of said license by reason of said violations, and hearing was held thereon on February 23, 1937, at which time satisfactory proof was offered of said sales to nonmembers.

The officers of the club have convinced the court that the club did not acquiesce in these violations but, on the other hand, expressly forbade them and discharged the steward when they were discovered.

Section 602 of the Pennsylvania Liquor Control Act of 1933, as amended in 1935, provides:

*"Except as provided in this act*, it shall be unlawful for any person, by himself, or by an employe or agent, to expose or keep for sale, or directly or indirectly, or upon any pretense, or upon any device, to sell, or offer to sell, any liquor within this Commonwealth". (Italics ours.)

Any sales, therefore, must be justified and authorized by some provision of that act. We are convinced that the language of section 401 of the act as amended:

"Subject to the provisions of this act, and regulations promulgated under this act, the board shall have authority to issue a liquor license for any premises kept or operated by a hotel, restaurant or club . . . entitling the hotel, restaurant or club . . . to sell the same, and also malt or brewed beverages, to guests, patrons or members for consumption on the hotel, restaurant or club premises"

does not give to each class of licensee the right to sell to all three classes of customers, but that each is limited to its customers as aptly described, namely, hotels to guests, restaurants to patrons and clubs to members. If the other meaning had been intended, one word could have been found covering all three or the word "and" would have been used in place of "or" before "members": In re Revocation of Club Liquor License, 37 Lack. Jur. 9; In re Scottdale Country Club, no. 47, August term, 1935, Q. S. of Westmoreland County.

That the club held a catering license complicates the case but does not save the situation. We have searched the act in vain for any provision for a catering license. The only information afforded us upon the subject is Pennsylvania Liquor Control Board publication no. 609, effective August 1, 1936, which the parties agree is presently in effect and which quotes from bulletin no. 15 of said board:

"Catering for the purpose of these rules and regulations shall mean the furnishing of liquor or malt liquor, or both, or any admixture thereof, to be served with food prepared on the premises, or brought on the premises already prepared for the accommodation of groups of non-members who are using the facilities of the club by prior arrangement for private meetings or functions, such as dances, card parties, or banquets, etc., and which is paid for by the non-member or members".

The sales in question clearly do not come within the enlarged class of service open to the licensee, for there was no "prior arrangement" or "function" which would justify the sales to nonmembers.

The sales to nonmembers on two separate occasions were, therefore, clearly in violation of the act. The other question remaining is the responsibility of the club for the acts of its stewards.

We note that the sales were made during the attendance of both stewards and that the second one, while denying knowledge of the sale of drinks, participated in serving sandwiches to the officers. A club entrusts its liquor-serving privilege to its stewards and must be held responsible for their conduct of it.

In fixing the penalty as between revocation or a period of suspension, each case must stand on its own facts. In this case the bona fides of the club membership, the lack of complaint as to its sale to the general public, its possession of a license granting broad powers for which a full license fee was paid, and its apparent good faith in discharging the offending employe bespeak leniency. The possession of a costly investment may be considered, but cannot be strongly urged in prevention of a penalty, for the prosperous license holders must observe the same good faith as all others.

Bearing in mind the above considerations, we feel that the revocation of the license, with its added penalties, would be too severe under the circumstances, and that a suspension of the license for the period of four months from the expiration of the license year would serve as a warning to this and other clubs to demand from their stewards the strictest observance of the law.

The club has also appealed from the refusal of its license application for the year beginning February 1, 1937, which appeal is entered in our court of quarter sessions to no. 61, January sessions, 1937. If, as we have decided, a suspension of four months sufficiently penalizes the club for its infractions of the law, then such infrac-

tions should not bar it from obtaining a new license, subject to such suspension, and an order will be made in due time to that effect. This action seems to find support in the advance note of a case recently decided by our Superior Court: In re Appeal of Young Men's Republican Club of the Fifteenth Ward, 125 Pa. Superior Ct. 486.

And now, March 15, 1937, upon consideration of the testimony in the above-entitled action, the respondent is found to have violated the laws relating to the sale of liquor while holding a club catering license under the Pennsylvania Liquor Control Board for the year ending January 31, 1937, by having, on two occasions, to wit, December 15 and December 17, 1936, sold liquor to non-members of the club, not members of a party to which said club was catering. It is, therefore, ordered and decreed that the club catering liquor license of said Emaus Nest of Owls No. 1362 be suspended for the period of four months from February 1, 1937, and that said club pay the costs of these proceedings.

Iobst, P. J., concurs.

From Edwin L. Kohler, Allentown.